IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 08-cv-02646-RBJ-MEH

_____

KIKKERLAND DESIGN, INC., a New York domestic business corporation,

      Counter Claimant,

v.

B & R PLASTICS, INC., a Colorado corporation
REED HENSCHEL, an individual,
BRADLEY EVELETH, an individual,
FOLDZ LLC, a South Dakota limited liability company, and
TOWER STOOLS, LLC, a South Dakota limited liability company,

      Counter Defendants;

REED HENSCHEL, an individual,
BRADLEY EVELETH, an individual,
FOLDZ LLC, a South Dakota limited liability company, and
TOWER STOOLS, LLC, a South Dakota limited liability company,

      Counter Claimants,

v.

KIKKERLAND DESIGN, INC., a New York domestic business corporation,

      Counter Defendant;

B & R PLASTICS, INC., a Colorado corporation

      Cross/Counter Claimant,

v.

REED HENSCHEL, an individual,
BRADLEY EVELETH, an individual,
FOLDZ LLC, a South Dakota limited liability company, and
TOWER STOOLS, LLC, a South Dakota limited liability company.

      Cross/Counter Defendants.

## B&R PLASTICS' CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................... 1

II.   CLAIM CONSTRUCTION STANDARDS ................................................................. 3

      A.    The Court Construes The Disputed Terms Through The Eyes Of A
            Person Of Ordinary Skill In The Art ("POSITA") ........................................ 4

      B.    The POSITA's Understanding Of The Disputed Terms Comes From
            Intrinsic and Extrinsic Evidence ................................................................. 4

III.  CLAIM TERMS IN DISPUTE .................................................................................. 6

IV.   THE COURT SHOULD ADOPT B&R'S ORDINARY AND CUSTOMARY
      MEANINGS FOR ALL DISPUTED CLAIM TERMS ............................................... 6

      A.    "wherein said first lateral portion and second lateral portion include
            at least one projection" .............................................................................. 6

      B.    "Edge" ....................................................................................................... 11

      C.    "Step" ........................................................................................................ 14

V.    CONCLUSION ....................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*AK Steel Corp. v. Sollac & Ugine.*,
   344 F.3d 1234 (Fed. Cir. 2003) ......................................................................................... 11

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.,*
   512 F.3d 1338 (Fed. Cir. 2008) ......................................................................................... 9

*CCS Fitness, Inc. v. Brunswick Corp.*,
   288 F.3d 1359 (Fed. Cir. 2002) ......................................................................................... 5

*Enzo Biochem, Inc. v. Applera Corp.*,
   599 F.3d 1325 (Fed. Cir. 2010) ......................................................................................... 12

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) ......................................................................................... 3

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967, 986 (Fed. Cir. 1995) ......................................................................................... 4, 5

*Phillips v. AWH Corp.*,
   415 F.3d 1303, 1316 (Fed Cir. 2005) (*en banc*) ............................................. 3, 4, 5, 14, 18

*Riverwood Int'l Corp. v. R.A. Jones & Co.*,
   324 F.3d 1346 (Fed. Cir. 2003) ......................................................................................... 4

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ......................................................................................... 5

**Other**

Webster's New World Dictionary, 366 (3rd Coll. ed. 1988)……....………………………...13

Manual of Patent Examining Procedure (8th ed., July 2010 rev.). ……………………..9

## I.    INTRODUCTION

The parties B&R Plastics, Inc. ("B&R"), Reed Henschel, Bradley Eveleth, Foldz

LLC and Tower Stools, LLC (collectively "Counter-defendants") and Kikkerland Design

Inc. ("Kikkerland") have exchanged proposed constructions for claim terms of the

asserted claims[1] of United States Patent 7,905,184 ("'184 Patent").  Counter-defendants

and B&R are pleased to report that they have reached agreement on the following

terms:

| Claim Term | Agreed Constructions by B&R and Counter-defendants |
|---|---|
| "rotatably interconnected" | two or more parts joined in a way that one part is capable of movement about an axis relative to the other part(s) |
| "support member" | a part that holds up another part. |
| "hinge" | a jointed or flexible device about which a part moves relative to an axis |
| "plastic material" | non-metallic, organic, synthetic or processed materials that are mostly thermoplastic or thermosetting polymers of high molecular weight. |
| "hard plastic material" | plastic that is hard, not likely to wear or break during continual use. |
| "step" | a rest for the foot, including a horizontal lower edge of an aperture of varying width and depth. |
| "hingedly interconnected" | two or more parts joined together in a hinge-like manner such that one part is capable of movement about an axis relative to the other part(s) |
| "projection" | a part that sticks out |
| "receptacle" | something that receives and contains a projection |
| "projection associated with an upper edge thereof for operable | engagement where a projection is received by a receptacle |

---

[1] The Counter-defendants have asserted that B&R infringes Claims 1, 2, 12, 13, 16, 19-22 of the '184 patent.

| Claim Term | Agreed Constructions by B&R and Counter-defendants |
|---|---|
| engagement within a corresponding receptacle" | |
| "collapsible" | to fold or come together more compactly |
| "underlying surface" | a surface below an object, including the floor or ground |
| "step or shelf" | step: A rest for the foot, including a horizontal lower edge of an aperture of varying width and depth.<br>shelf: a horizontal surface a distance from the floor to hold objects |
| "a table" | a piece of furniture having a substantially horizontal surface and one or more legs |

While accord has been reached on these claim terms, B&R and the Counter-defendants dispute the construction of two other claim terms. For the Court's convenience, the table below provides (1) the Disputed Claim Term, (2) B&R's Proposed Construction, and (3) Counter-defendants' Proposed Construction.

| Disputed Claim Term | B&R's Proposed Construction | Counter-defendants' Proposed Construction |
|---|---|---|
| "wherein said first lateral portion and second lateral portion include at least one projection" | said first lateral portion and said second lateral portion each having at least one projection | at least one projection associated with the upper edge of either the first lateral portion or second lateral portion or both |
| "edge" | the narrow part adjacent to a border | a border where an object or area begins or ends |

Also, as between B&R and the Counter-defendants, on the one hand, and Kikkerland, on the other hand, there is a dispute as to the meaning of the claim term "step." For the Court's convenience, the table below provides (1) the Disputed Claim

Term, (2) B&R/Counter-defendant's Proposed Construction, and (3) Kikkerland's

Proposed Construction.  (As noted above, B&R and the Counter-defendants both agree

on a construction for the claim term "step.")

| Disputed Claim Term | B&R/Counter-defendant's Proposed Construction | Kikkerland's Proposed Construction |
|---|---|---|
| "step" | q rest for the foot, including a horizontal lower edge of an aperture of varying width and depth. | A rest for the foot in climbing, as in a stair or the rung of a ladder. |

Thus, from B&R's perspective relative to the other litigants there are only three

claims terms in dispute that the Court needs to address:

| Disputed Claim Terms |
|---|
| "wherein said first lateral portion and second lateral portion include at least one projection" |
| "edge" |
| "step" |

As explained in detail herein, B&R's proposed constructions "stay[] true to the

claim language and most naturally align[] with the patent's description of the invention."

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed Cir. 2005) (*en banc*) (citation omitted).

Therefore, B&R respectfully requests that the Court enter an order adopting B&R's

proposed constructions of the disputed claim terms.

## II.    CLAIM CONSTRUCTION STANDARDS

Claim construction is a question of law for the court to decide.  *Markman v.*

*Westview Instruments, Inc.*, 517 U.S. 370, 388 (1996).  An aim of claim construction is

to determine how a person of ordinary skill in the art (a "POSITA") would have

understood the claim language at the time of the invention.  *See Markman v. Westview Instruments., Inc.*, 52 F.3d 967, 986 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

### A.   The Court Construes The Disputed Terms Through The Eyes Of A Person Of Ordinary Skill In The Art ("POSITA")

The court's starting point is to give each disputed term its ordinary and customary meaning as understood by persons of ordinary skill in the art "after reading the entire patent." *Phillips*, 415 F.3d at 1321.  "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* at 1314.

The court must "give a claim term the full range of its ordinary meaning as understood by persons skilled in the relevant art." *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1357 (Fed. Cir. 2003).  When determining the ordinary meaning of claim terminology, the court can look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Phillips*, 415 F.3d at 1314 (citation omitted).  "Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (citation omitted). Ultimately, "[t]he construction that stays true to the claim language and most naturally aligns with the patents description of the invention will be, in the end, the correct construction." *Id.* at 1316 (citation omitted).

### B.   The POSITA's Understanding Of The Disputed Terms Comes From Intrinsic and Extrinsic Evidence

The language of the asserted claims, the '184 patent specification, and the prosecution history are the primary sources of evidence to consider when construing

claims. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Such evidence is called the "intrinsic" evidence.

First, claim construction begins with and focuses on the words of the claim. *See id.* The court may examine both asserted and non-asserted claims to define the scope of the patented invention. *Id.*

Second, the patent specification is reviewed to determine whether claim terms have been used in a manner inconsistent with their ordinary meaning. *Id.* But the scope of a claim cannot be narrowed by importing limitations from the specification that are absent from the claim. *See Phillips*, 415 F.3d at 1323. As the final step in evaluating the "intrinsic" evidence, the court can review the prosecution history to understand how the Patent Office and the applicant understood the claim language. *Id.* at 1314.

Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* at 1317 (citation omitted). Extrinsic evidence may sometimes help identify the ordinary meaning of claim terms. *Id.* at 1318-19. For instance, a dictionary definition may help establish the ordinary meaning of a claim term. *See e.g., CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002); *Vitronics Corp.*, 90 F.3d at 1584. Care must be taken to not use extrinsic evidence "for the purpose of varying or contradicting the terms of the claims." *Markman*, 52 F.3d at 981.

### III.    CLAIM TERMS IN DISPUTE

Between B&R, on the one hand, and the Counter-defendants and Kikkerland, on

the other hand, there are only three claims terms in dispute that the Court needs to

address:

| Disputed Claim Terms |
| --- |
| "wherein said first lateral portion and second lateral portion include at least one projection" |
| "edge" |
| "step" |

To the extent Counter-defendants or Kikkerland propose constructions for additional

claim terms, B&R reserves the right to respond to such constructions.

### IV.    THE COURT SHOULD ADOPT B&R'S ORDINARY AND CUSTOMARY MEANINGS FOR ALL DISPUTED CLAIM TERMS

B&R's constructions square with the customary and ordinary meanings, the

claims, the specification and the prosecution history.  Its constructions square with the

understanding of POSITAs, as well as common sense.

### A.    "wherein said first lateral portion and second lateral portion include at least one projection associated with an upper edge"

B&R and Counter-defendants disagree as to the meaning of the term "wherein

said first lateral portion and second lateral portion include at least one projection" as

used in Claim 1 of the '184 patent.  Below are the parties' competing constructions.

| Disputed Claim Term | B&R's Proposed Construction | Counter-defendants' Proposed Construction |
| --- | --- | --- |
| "wherein said first lateral portion and second lateral portion include at least one projection" | said first lateral portion and said second lateral portion each having at least one projection | at least one projection associated with the upper edge of either the first lateral portion or second lateral portion or both |

The central issue is whether the "at least one projection" limitation requires "at least one projection" on the first lateral portion _and_ "at least one projection" on the second lateral portion, or whether the limitation only requires "at least one projection" on _either_ the first lateral portion and the second lateral portion.  B&R submits that the claim term is insoluably ambiguous and thus incapable of being construed.  If the Court, however, is inclined to construe the claim term B&R submits that its construction is the only appropriate construction given the high degree of uncertainty and ambiguity in Claim 1.[2]

The high degree of uncertainty and ambiguity in Claim 1 is due to an inexplicable inversion of terminology in Claim 1 when compared to the rest of the '184 patent.  Claim 1 drastically departs from the rest of the '184 patent by requiring each "lateral portion" to have two "folding support members," whereas the rest of the '184 requires each "folding support members" to have two "lateral members." In other words, the '184 patent frames the "folding support members" as the dominant, foundational unit (i.e. the side walls), which each are comprised of two lateral members.  Claim 1, contrary to the rest of the '184 patent, inexplicably reverses that relationship.   Below is a comparison of Claim 1 and representative examples of the rest of the '184 patent.

---

[2]  By arguing in the laternative a proposed claim construction, B&R wishes to make clear that it is not conceding that the any claim satisfies the rigors of 35 U.S.C. § 112. B&R reserves its rights to challenge the validity of any of the asserted claims on this statutory ground.

| Claim 1 | Representative Examples of Rest of the '184 Patent |
|---|---|
| "a **first lateral portion** comprising a first folding support member hingely interconnected to a second folding support member" | a **first folding support member** … comprising a first lateral portion that is hingedly interconnected to a second lateral portion." |
| "a **second lateral portion** comprising a third folding support member hingedly interconnected to a fourth folding support member" | a **second folding support member**…comprising a first lateral portion that is hingedly interconnected to a second lateral portion." |

(Compare '184 patent, Claim 1 to '184 Patent, Col. 22 lns 32-34.)  This inversion,

whether inadvertent or intentional, injects irreconcilable and insoluble ambiguity into

Claim 1.  To be sure, all of the terminology used in the '184 specification is turned on its

head.   Even the <u>glossary</u> of claim terms is flatly contradicted by the terminology

inversion of Claim 1.

- 212 First Folding Support Member
- 216 Second Folding Support Member
- 220 First Lateral Portion (**of** First or Second Folding Support Members 212 and 216)
- 224 Second Lateral Portion (**of** First or Second Folding Support Members 212 and 216)



('184 Patent, Col. 19, lns 10-14; Fig. 16)  Again, Claim 1 refers to a first lateral portion

being comprised of a first and second folding member, and a second lateral portion

being comprised of a third and fourth folding members.  Tellingly, nowhere else in the

'184 patent is there any reference to a "third" or "fourth" folding member.  Inasmuch as

Claim 1 is ambiguous,[3]  the claim term "wherein said first lateral portion and second

---

[3] For this reason alone, the claim is unclear, indefinite and thus invalid under 35 U.S.C. 112.  B&R reserves its rights to challenge the validity of the '184 patent for failure to

lateral portion include at least one projection" is also ambiguous.   While the Court need not decide the invalidity issue of indefiniteness (35 U.S.C. § 112) at this time, it is important here to note the source of this ambiguity and uncertainty when attempting to construe the claim term at issue, which is an integral part of (insolubly ambiguous) Claim 1.

The uncertainty and ambiguity is compounded because Claim 1 refers to a "***said*** first lateral portion and second lateral portion."  (emphasis added).  Use of the signal word "said" indicates that the claim term referred to has been previously introduced in the claim.  *See, e.g., Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1343 (Fed. Cir. 2008) (noting that claim terms using "said" are "anaphoric phrases, referring to the initial antecedent phrase").   In patent lingo, the word "said" connotes a prior reference to a specific claim term; this tenet is known as "antecedent basis."  When a claim lacks antecedent basis, it creates a lack of clarity. See MANUAL OF PATENT EXAMINING PROCEDURE 2173.05(e) (8th ed., July 2010 rev.). ("A claim is indefinite when it contains words or phrases whose meaning is unclear. The lack of clarity could arise where a claim refers to "said lever" or "the lever," where the claim contains no earlier recitation or limitation of a lever and where it would be unclear as to what element the limitation was making reference.")  Here, to use the term "***said*** first lateral portion and second lateral portion," there must be a prior reference to an "***a*** first lateral portion and second lateral portion." In Claim 1, there is no prior reference to this phrase.

---

comply with 35 U.S.C. § 112. *See, e.g., Energizer Holdings, Inc. v. ITC*, 275 Fed. Appx. 969, 980 (Fed. Cir. 2008) ("Because I believe the claim is insolubly ambiguous and, thus, indefinite, I concur that claim 1 of the '709 patent is invalid.") (J. Newman.)

Due to the lack of antecedent basis, the Claim 1 on its face is entirely unclear as to what component or components must have "at least one projection."  Is it the entire phrase "first lateral portion and second lateral portion" or is it each of the "first lateral portion" and the "second lateral portion?"  As noted above, inasmuch as the terminology is inverted in Claim 1, the written specification is of minimal assistance.  Under the circumstances, the drawings are the most probative intrinsic evidence.  Referring to Figure 16, which is the **only** figure in the '184 patent showing a "projection," both of the folding support members (i.e. the side walls) have "at least one projection."  Indeed, Figure 16 contemplates two projections (324) per opposing side wall.



"As shown in FIG. 16, a projection 324 is located on an upper surface 328 of each of the first and second lateral portions 220 and 224 of the folding support members 212 and 216. Upon expansion of the stool 200 to its use position, the first and second upper portions 244 and 248 of the upper member 240 are rotated toward the upper surface 328 of the lateral portions 220 and 224. The projections 324 are then received within the receptacles 332 within the first and second upper portions 244 and 248 to lock the stool 200 in its use position."

('184 Patent, Col. 14, lns. 5-14.) In view of this reasonably clear disclosure in Figure 16, and in view of the insoluble uncertainty and ambiguity in the rest of Claim 1, it is most

reasonable to construe the claim term to mean that said first lateral portion must have "at least one projection," and said second lateral portion must have "at least one projection." Thus, B&R urges the Court to adopt the following construction: "said first lateral portion and said second lateral portion each having at least one projection."

### B.   "Edge"

B&R and the Counter-defendants disagree as to the meaning of the term "edge" as used in the '184 patent. Below are the parties' competing constructions.

| Disputed Claim Term | B&R's Proposed Construction | Counter-defendants' Proposed Construction |
|---|---|---|
| "edge" | the narrow part adjacent to a border | a border where an object or area begins or ends |

A plain reading of the '184 patent makes it clear that the term "edge" is not to be understood as a border where an object begins or ends (as Counter-defendant's urge), but rather the term "edge" is a locational term used to define the relative spatial relationships and connections among the various component parts of the foldable device in question. Here, the intrinsic evidence – the claims, the specification and the figures - supports B&R's position.

By way of background, like most utility patents, the claims of the '184 patent include both independent and dependent claims. It is black letter law that a dependent claim is narrower in scope than the independent claim from which it depends, and conversely, that an independent claim is broader than a dependent claim which depends from it. See *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1242 (Fed. Cir. 2003) ("Under the doctrine of claim differentiation, dependent claims are presumed to be of narrower scope than the independent claims from which they depend."). In other

words, under the Doctrine of Claim Differentiation, a dependent claim adds an additional claim limitation (i.e. narrowing limitation) to the independent claim from which it depends.

Here, dependent Claim 22 depends from independent Claim 12.  Thus, the scope of Claim 22 must fall within the scope of independent Claim 12.  See *Enzo Biochem, Inc. v. Applera Corp.,* 599 F.3d 1325, 1334 (Fed. Cir. 2010) ("A person of ordinary skill would presume that a structure recited in a dependent claim will perform a function required of that structure in an independent claim.")  As explained below, the independent-dependent claim relationship of Claims 12 and 22 fully support B&R's proposed construction of the term "edge," and belies Kikkerland's proposed narrower construction of the term.

Specifically, Claim 12 requires that the upper "edges" of the non-folding support members are hingedly connected to the outer "edges" of the upper member.  Claim 22 (which is narrower than, and must fall within the scope of, independent Claim 12) is directed at a configuration where the connection between the upper member (i.e. top) and the non-folding support members is not at a precise corner, i.e., "the border where an object begins or ends."  Rather, Claim 22 contemplates a "lip" configuration, where the surface area of the upper member (i.e. the top) is greater than the area defined by the upper edges of the four support members. (i.e., the side walls).  Claim 22 spells out this spatial relationship:

> Claim 22: The foldable device as claimed in claim 12, wherein said upper member comprises **a surface area greater** than an area defined by said upper edge of said first non-folding support member, said upper edge of said second non-folding support member and upper edges of said first

folding support member and said second folding member, and wherein said foldable device comprises a table.



('184 Patent, Claim 22; Figs. 25-26.)  In view of the requirements of dependent Claim 22, and under the Doctrine of Claim Differentiation, the "edge" connection of Claim 1 between the top and sidewalls need **not** be at the precise corner.  The term "edge," taken in context (including in the context of the independent-dependent claim relationship of Claims 12 and 22) means "the narrow part adjacent to a border." Accordingly, a lip configuration comfortably falls within the scope of Claim 12's "edge" limitation.

By way of analogy, consider the term "edge" used in the context of the phrases "the edge of the bed" or "the edge of the deck."   There, term "edge" is not so narrowly used, as Counter-defendants urge.  Indeed, extrinsic evidence, such as dictionary definitions, fully supports B&R's proposed definition.  *See* Webster's New World Dictionary, 366 (3rd Coll. ed. 1988) ("the narrow part adjacent to a border <the edge of the deck>").

Thus, B&R submits that the appropriate construction for the claim term "edge" is: "the narrow part adjacent to a border."

C.      "Step"

While B&R and the Counter-defendants agree on the meaning of the claim term

"step," Kikkerland disagrees with this proposed construction.  Below are the parties'

competing constructions.

| Disputed Claim Term | B&R's/Counter-defendants' Proposed Construction | Kikkerland's Proposed Construction |
|---|---|---|
| "step" | a rest for the foot, including a horizontal lower edge of an aperture of varying width and depth | a rest for the foot in climbing, as in a stair or the rung of a ladder |

Under the applicable claim construction standards, Kikkerland improperly imports

a limitation that the term step must support the weight of a human "climbing" on the

step.  *See Phillips*, 415 F.3d at 1323 (issuing admonition regarding importing

limitations).  But the '184 patent does not define the term "step" by any function or as

narrowly as Kikkerland urges.  Indeed, the '184 patent uses the term "step" in a broader

manner. (See, e.g. '184 Patent Specification: Col. 2, lns. 33-44; Col. 9, lines 28-51;

Figs. 6, reference nos. 98 and 102; and Figs. 7 and 17, reference no 260; Fig. 23,

reference no 360.) Indeed, the '184 patent specification provides several clear and

differing examples of what it considers a "step."

> In another embodiment, the trapezoidal first support member 18 is further comprised of an aperture 94 as shown in FIGS. 1, 2, and 4. The purpose of the aperture 94 is to reduce the weight of the stool 10, 10'. The aperture 94 may be a variety of shapes. In accordance with some embodiments of the present invention, the aperture 94 may comprise at least one straight edge. For example the aperture 94 may be in the form of a rectangle or a square. In one preferred embodiment, the aperture 94 comprises a semi-circular shape. Moreover, the second support member 22 could also have a similar or different shaped aperture 94 in addition to or in replacement of the aperture 94 of the first support member 18. For those stools 10, 10' comprising a substantially horizontal lower edge 98 to the aperture 94, the aperture 94 may be used to provide a step 102 for the user. For added stability, a widened portion, plank, board, or rail can be integrated into or

otherwise interconnected to the first support member 18 or second support member 22 along the horizontal lower edge 98. In other embodiments, and as described in detail below, multiple steps can be incorporated into the stool 10, 10'. For example, a plurality of steps can be provided by either increasing the size of the aperture 94 in the first support member 18 and interconnecting additional planks or rails in parallel across the aperture 94, or by adding additional apertures in the first support member 18 above the aperture 94. By adding more steps 102, the height of the stool 10, 10' can also be varied. As the height of the stool 10, 10' is increased, the stool 10, 10' can be adapted for use as a sawhorse, table, or ladder.



Fig. 1



Other examples of "Steps" in the '184 Patent (See Yellow Highlighting)

('184 Patent, Col. 9, lns. 33-61) (emphasis added).  Thus, not only is a "step" present when there is a rail or plank that spans across an aperture, it is also present with the horizontal lower edge of the aperture itself.  Indeed, the stool art shows countless other examples of "steps" (i.e. horizontal lower edge of an aperture) consistent with the usage of that term in the '184 patent.  Below are just a few images:



(Images found at http://images.google.com/; search "stools").  Kikkerland's proposed construction is too narrow under the applicable claim construction standards and runs counter to the intrinsic evidence set forth in the '184 patent and the wealth of extrinsic evidence. Thus, B&R urges the Court to adopt the following construction for the claim term "step": "a rest for the foot, including a horizontal lower edge of an aperture of varying width and depth."

## V.     CONCLUSION

The Federal Circuit Court of Appeals has emphasized that ultimately "[t]he construction that stays true to the claim language and most naturally aligns with the patents description of the invention will be, in the end, the correct construction."  *Id.* at 1316 (citation omitted).  B&R respectfully submits that its constructions most closely align with this goal.  For the foregoing reasons, B&R respectfully asks the Court to adopt the ordinary and customary claim constructions proposed by B&R and set forth below.

| Disputed Claim Term | B&R's Proposed Construction |
| --- | --- |
| "wherein said first lateral portion and second lateral portion include at least one projection" | said first lateral portion and said second lateral portion each having at least one projection |
| "edge" | the narrow part adjacent to a border |
| "step" | a rest for the foot, including a horizontal lower edge of an aperture of varying width and depth |

Respectfully submitted this 30th day of March, 2012.


*S/ D. Sean Velarde*

D. Sean Velarde
Trevor A. Crow
Burns Figa & Will, P.C.
6400 S. Fiddler's Green Circle
Suite 1000
Greenwood Village, CO 80111
Phone:         303-796-2626
Fax:            303-796-2777
E-mails:       svelarde@bfw-law.com
                    tcrow@bfw-law.com

**Attorneys for Plaintiff and
Counter-Defendant
B&R Plastics, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2012, I electronically filed the foregoing **B&R PLASTICS' CLAIM CONSTRUCTION BRIEF** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses and/or I have deposited a true and correct copy of same in the U.S. Mail, addressed as follows:

Glenn H. Lenzen, Jr., Esq.
David S. Steefel, Esq.
Sudee Mirsafian Wright, Esq.
Husch Blackwell LLP
1700 Lincoln Street, Suite 4700
Denver, CO 80203
glenn.lenzen@huschblackwell.com
david.steefel@huschblackwell.com
sudee.wright@huschblackwell.com
Attorneys for Defendant Kikkerland
Design, Inc. and The Sportsman's Guide,
Inc.

Todd P. Blakely, Esq.
Joseph E. Kovarik, Esq.
Ian R. Walsworth, Esq.
Sheridan Ross P.C.
1560 Broadway, Suite 1200
Denver, Colorado 80202-5141
tblakely@sheridanross.com
jkovarik@sheridanross.com
jwalsworth@sheridanross.com
Attorneys for Counter Defendants, Counter
Claimants, and Cross/Counter Defendants
Bradley Eveleth, Foldz LLC, Reed
Henschel and Tower Stools, LLC

Stephen J. Wesolick, Esq.
Wesolick Konenkamp & Rounds, LLP
201 Main Street, Suite 204/ PO Box 169
Rapid City, SD 57709
sjwesolick@gmail.com
Attorney for Bradley Eveleth, Reed
Henschel, Foldz, LLC, and Tower Stools,
LLC.

_S/ D. Sean Velarde_
D. Sean Velarde
Trevor A. Crow
Burns Figa & Will, P.C.
6400 S. Fiddler's Green Circle
Suite 1000
Greenwood Village, CO 80111
Phone:       303-796-2626
Fax:          303-796-2777
E-mails:    svelarde@bfw-law.com
                 tcrow@bfw-law.com