IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 08-cv-02646-RBJ-MEH

KIKKERLAND DESIGN, INC., a New York domestic business corporation,

    Counter Claimant,

v.

B & R PLASTICS, INC., a Colorado corporation,
REED HENSCHEL, an individual,
BRADLEY EVELETH, an individual,
FOLDZ LLC, a South Dakota limited liability company, and
TOWER STOOLS, LLC, a South Dakota limited liability company,

    Counter Defendants;

REED HENSCHEL, an individual,
BRADLEY EVELETH, an individual,
FOLDZ LLC, a South Dakota limited liability company, and
TOWER STOOLS, LLC, a South Dakota limited liability company,

    Counter Claimants,

v.

KIKKERLAND DESIGN, INC., a New York domestic business corporation,

    Counter Defendant;

B & R PLASTICS, INC., a Colorado corporation,

    Cross/Counter Claimant,

v.

REED HENSCHEL, an individual,
BRADLEY EVELETH, an individual,
FOLDZ LLC, a South Dakota limited liability company, and
TOWER STOOLS, LLC, a South Dakota limited liability company,

    Cross/Counter Defendants.

---

**COUNTER CLAIMANT KIKKERLAND DESIGN, INC.'S
CLAIM CONSTRUCTION BRIEF**

---

Counter Claimant Kikkerland Design, Inc. ("Kikkerland") respectfully submits the following Claim Construction Brief regarding the disputed claim term "step" in United States Patent No. 7,905,184 (the "'184 Patent").

## I.  INTRODUCTION

Counter Defendant Bradley Eveleth ("Eveleth"), the inventor of the '184 Patent, and Counter Defendant B&R Plastics, Inc. ("B&R," collectively the "Counter Defendants") are urging this Court to adopt a strained and unreasonable construction of the term "step." The reason is simple—the Counter Defendants are seeking to contrive yet another infringement claim against Kikkerland to improperly prevent Kikkerland from competing against them in the United States market for plastic folding stools after their concerted efforts to do so through United States Patent No. D460,566 failed.

The term "step" should be given its ordinary and customary meaning as proposed by Kikkerland. See Dkt. No. 283, p. 4 (Construing "step" as "a rest for the foot in climbing, as in a stair or the rung of a ladder."). The Counter Defendants do not provide a valid basis for departing from this fundamental principle of claim construction. The Counter Defendants' proposed construction of "step" as "a rest for the foot, including a horizontal lower edge of an aperture of varying width and depth" (see Dkt. No. 283, pp. 3, 5) defies the standard rules of claim construction and common sense. Moreover, the Counter Defendants' reliance on the embodiment in Figure 6 of the '184

2

Patent is misplaced pursuant to the standard rules of claim construction and the intrinsic and extrinsic evidence.

## II. ARGUMENTS AND AUTHORITIES

### A. The Standard Rules of Claim Construction.

In construing patent claims, there is a "heavy presumption" that claim terms carry their "ordinary and customary meaning." *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1164 (Fed. Cir. 2004). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

"[T]he best source for understanding a technical term is the specification," which "may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess." *Id.* at 1315-16. In such cases, the patentee's definition governs but only if the definition "appear[s] with reasonable clarity, deliberateness and precision to affect the claim." *CIVIX-DDI, LLC v. Microsoft Corp.*, 84 F. Supp. 2d 1132, 1158 (D. Colo. 2000) (internal quotations omitted). The Federal Circuit has "repeatedly emphasized that the statement in the specification must have sufficient clarity to put one reasonably skilled in the art on notice that the inventor intended to redefine the claim term." *Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1370, 1379 (Fed. Cir. 2005) (finding that the patentee clearly, deliberately and precisely defined a phrase in the patent by setting forth the phrase in quotations and including the statement "the phrase means" before providing a definition).

Claim construction pursuant to the specification should be "informed, as needed, by the prosecution history." *Phillips*, 415 F.3d at 1315 (internal quotations omitted). Because the prosecution history consists of the complete record of the proceedings before the United States Patent and Trademark Office ("USPTO"), it "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* at 1317. A review of the prosecution history also "ensures that claims are not construed one way in order to obtain their allowance and in a different way against accused infringers." *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005).

### B.  The Term "Step" Should Be Given Its Ordinary and Customary Meaning.

In light of the above, the Court should construe "step" in accordance with the ordinary and customary meaning as discernible from a standard dictionary: "A rest for the foot in climbing, as in a stair or the rung of a ladder." Dkt. No. 283, p. 4; *see also* Ex. 1 (Webster's New College Dictionary (4th ed. 2007)) at p. 1404.[1] The Federal Circuit has specifically stated:

> Because dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology, those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention.

---

[1] Although the Federal Circuit has emphasized the importance of intrinsic evidence in claim construction, it has also "authorized district courts to rely on extrinsic evidence, which consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries and learned treatises." *Phillips*, 415 F.3d at 1317 (internal quotations omitted).

4

*Phillips*, 415 F.3d at 1318. This is particularly true where, as here, the disputed term does not carry a special meaning and its ordinary and customary meaning is "readily apparent even to lay judges" such that claim construction involves "little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314; *see also Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1311 (Fed. Cir. 2002) ("The proper approach is to construe the claim language using standard dictionary definitions, because here, the claims have no specialized meaning.").

**C. Under the Standard Rules of Claim Construction, the Counter Defendants Cannot Overcome the Heavy Presumption that "Step" Carries Its Ordinary and Customary Meaning.**

**1. The Counter Defendants' Proposed Construction Is Not Set Forth in the '184 Patent with Reasonable Clarity, Deliberateness and Precision.**

None of the evidence cited by the Counter Defendants clearly, deliberately and precisely defines "step" as "a rest for the foot, including a horizontal lower edge of an aperture of varying width and depth." *See* Dkt. No. 283, pp. 3, 5. In fact, the phrase "rest for the foot" does not appear in any portion of the '184 Patent. Nothing in the '184 Patent would otherwise put a person reasonably skilled in the art on notice that Eveleth intended to redefine "step" in a manner that differs from its ordinary and customary meaning.

In *Fujinon Corp. v. Motorola, Inc.*, No. 07-533-GMS-LPS, 2009 WL 2920808, * 6-7 (D. Del. Sept. 18, 2009), the court held that the patentee did not act as his own lexicographer by defining "stop" as "aperture stop" pursuant to the following sentence in the specification: "The single focus lens further includes a diaphragm stop . . . that

5

operates as an aperture stop." First, the court found that this sentence did not state a definition of "stop" with "reasonable clarity, deliberateness and precision, as is necessary when an inventor wishes to be his own lexicographer." *Id.* at * 7 (internal quotations omitted). Second, the court found that because the sentence referred to a single embodiment of the invention, it was not a definition that could extend to the claims. *Id.*; *see also Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 792 (Fed. Cir. 2010) ("A construing court's reliance on the specification must not go so far as to import limitations into claims from examples or embodiments appearing only in a patent's written description . . . unless the specification makes clear that the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive." (internal quotations omitted)). Finally, the court found that the purported definition of "stop" was not written in the same manner as other definitions in the patent. *Fujinon Corp.*, 2009 WL 2920808 at * 7; *see also Abbott Labs. v. Andrx Pharm., Inc.*, 473 F.3d 1196, 1210 (Fed. Cir. 2007) (finding that the patentee's use of the phrase "as used herein means" when defining certain claim terms was evidence that the patentee did not act as his own lexicographer with respect to a claim term that was not defined in the same manner).

The references in the specification of the '184 Patent to the horizontal lower edge 98/step 102 of aperture 94 (*see* '184 Patent at Column 2 lines 33-44, Column 9 lines 28-51), are analogous to the sentence in the *Fujinon* patent and do not overcome the heavy presumption that "step" carries its ordinary and customary meaning. They are not clear, deliberate and precise; they relate only to the single embodiment in Figure 6;

and they are not written in the same manner as other express definitions in the '184 Patent. *See, e.g.,* '184 Patent at Column 9 line 65–Column 10 line 2 (defining "trapezoidal"), Column 12 lines 43-48 (defining "eccentrically"). Accordingly, the references are not sufficient to establish that Eveleth acted as his own lexicographer in defining step as "a rest for the foot, including a horizontal lower edge of an aperture of varying width and depth."

### 2. The Counter Defendants' Proposed Construction of "Step" Is Improper because It Would Render the Claims of the '184 Patent Inoperable and Thus Invalid.

Under the standard rules of claim construction, and as Eveleth's counsel acknowledged at the *Markman* hearing, if the lower horizontal edge 98/step 102 of aperture 94 cannot be used as an actual step, it should not be construed as such. The Federal Circuit has "consistently employed the caveat" that, if possible, "claims should be construed to sustain their validity." *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999); *see also Whittaker Corp. v. UNR Indus., Inc.*, 911 F.2d 709, 712 (Fed. Cir. 1990) ("[C]laims are generally construed so as to sustain their validity, if possible.").

One requirement for validity is that a claim be operable: "[W]hen an impossible limitation, such as a nonsensical method of operation, is clearly embodied within the claim, the claim must be held invalid." *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1359 (Fed. Cir. 1999); *see also Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 956 (Fed. Cir. 1983) ("Because it is for the invention as claimed that enablement must clearly exist, and because the impossible cannot be enabled, a claim containing a limitation impossible to meet may be held invalid under [35 U.S.C.] § 112."). For

example, in *Process Control Corp.*, the Federal Circuit found that the patent at issue was invalid due to a definition of the term "discharge rate," which "embodie[d] an inoperable method that violate[d] the principle of conservation of mass." 190 F.3d at 1359.

Extrinsic evidence and common sense prove that the lower horizontal edge 98/step 102 of aperture 94 cannot be used as a step. *See generally* Ex. 2 (Declaration of Charles L. Mauro, CHFP).[2] The lower horizontal edge 98/step 102 does not meet published and well understood human factors engineering, design engineering and safety engineering functional requirements for an actual step. *Id.* at ¶¶ 7-8. If a user of the stool embodied in the '184 Patent actually employed the lower horizontal edge 98/step 102 of aperture 94 as a step, the stool could collapse, be otherwise unstable and cause injury to the user. *Id.* at ¶¶ 9-10.

Thus, the Counter Defendants' proposed construction of "step" as lower horizontal edge 98/step 102—which renders the claims of the '184 Patent inoperable and thus invalid—is improper and "should be viewed with extreme skepticism." *Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 275 F.3d 1371, 1376 (Fed. Cir. 2002) (vacated and remanded on other grounds); *see also Modine Mfg. Co. v. United States Int'l Trade Comm'n*, 75 F.3d 1545, 1557 (Fed. Cir. 1996) ("When claims are amenable to more

---

[2] As explained in footnote 1, the Federal Circuit has authorized district courts to rely on expert testimony in construing patent terms. The Federal Circuit has specifically stated that "extrinsic evidence in the form of expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318.

than one construction, they should when reasonably possible be interpreted so as to preserve their validity.") (abrogated on other grounds).

### 3. The Counter Defendants' Proposed Construction of "Step" Undermines the Public Notice of Function of the '184 Patent.

As Eveleth's counsel acknowledged at the *Markman* hearing, a patent serves an important public notice function by telling the public which products are and are not covered by the patent. *See, e.g., Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1091 (Fed. Cir. 2009) (discussing the importance of the ability of "potential infringers to ascertain the propriety of particular activities" and "the notice function central to the patent system"); *PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1361 (Fed. Cir. 2004) (emphasizing "the important public notice function of patents—the mechanism whereby the public learns which innovations are the subjects of the claimed invention, and which are in the public domain"). The Counter Defendants' proposed construction of "step" as lower horizontal edge 98/step 102 of aperture 94 undermines this public notice function. Indeed, as the Court recognized at the *Markman* hearing, no reasonable person would consider horizontal lower edge 98/step 102 to be an actual step.

### 4. The Counter Defendants' Proposed Construction of "Step" Is Inapposite to the Stated Purpose and Intent of Aperture 94.

Eveleth's own stated purpose and intent of the aperture feature is to reduce the weight of the stool embodied in the '184 Patent. The specification of the '184 Patent states, in relevant part, that "[t]he purpose of aperture **94** is to reduce the weight of the stool **10, 10'**." *See* '184 Patent at Column 9 lines 36-37 (emphasis in the original).

<0>
</0>

than one construction, they should when reasonably possible be interpreted so as to preserve their validity.") (abrogated on other grounds).

### 3. The Counter Defendants' Proposed Construction of "Step" Undermines the Public Notice of Function of the '184 Patent.

As Eveleth's counsel acknowledged at the *Markman* hearing, a patent serves an important public notice function by telling the public which products are and are not covered by the patent. *See, e.g., Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1091 (Fed. Cir. 2009) (discussing the importance of the ability of "potential infringers to ascertain the propriety of particular activities" and "the notice function central to the patent system"); *PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1361 (Fed. Cir. 2004) (emphasizing "the important public notice function of patents—the mechanism whereby the public learns which innovations are the subjects of the claimed invention, and which are in the public domain"). The Counter Defendants' proposed construction of "step" as lower horizontal edge 98/step 102 of aperture 94 undermines this public notice function. Indeed, as the Court recognized at the *Markman* hearing, no reasonable person would consider horizontal lower edge 98/step 102 to be an actual step.

### 4. The Counter Defendants' Proposed Construction of "Step" Is Inapposite to the Stated Purpose and Intent of Aperture 94.

Eveleth's own stated purpose and intent of the aperture feature is to reduce the weight of the stool embodied in the '184 Patent. The specification of the '184 Patent states, in relevant part, that "[t]he purpose of aperture **94** is to reduce the weight of the stool **10, 10'**." *See* '184 Patent at Column 9 lines 36-37 (emphasis in the original).

Eveleth refers to the use of arch structures, apertures of different configurations, openings, and material selection in several places within the specification for the specific intended purpose of reducing the weight of the stool. *See id.* at Column 9 lines 32-33, Column 10 lines 60-64 and Column 13 lines 25-30. This is consistent with the common sense notion that the use of cutouts and apertures in a plastic injection molded article reduces the amount of materials used to produce the article (in this case, a stool) and, therefore, reduces the weight of the article.

**D.  The '184 Patent Excludes the Embodiment in Figure 6, Upon Which the Counter Defendants Rely for Their Proposed Construction of "Step."**

The Counter Defendants' proposed construction of "step" also fails because the intrinsic evidence establishes that the '184 Patent excludes the embodiment in Figure 6 upon which the Counter Defendants base their proposed construction of "step."

On September 29, 2009, during the prosecution of the '184 Patent, the examiner issued an office action stating that the '184 Patent application disclosed thirteen patentably distinct embodiments according to the following submitted figures: Figs. 1, 2, 3 and 6; Figs. 4 and 5; Figs. 7-16; Figs. 17-20; Figs. 21 and 22; Figs. 23 and 24; Fig. 25; Fig. 26; Fig. 27; Figs. 28 and 30; Fig. 29; Figs. 31, 32, and 33; and Figs. 34, 35 and 36. Ex. 3 (Office Action) at p. 3. The office action included a restriction requirement pursuant to 35 U.S.C. § 121,[3] which required Eveleth to file a reply electing one of the thirteen embodiments for examination and identifying the claims encompassing the chosen embodiment. *Id.* The office action stated that the election could "be made with

---

[3] 35 U.S.C. § 121 provides, in relevant part, that "[i]f two or more independent and distinct inventions are claimed in one application, the Director may require the application to be restricted to one of the inventions."

10

or without traverse," meaning Eveleth could present arguments regarding why the restriction requirement was improper as to any or all of the thirteen embodiments. *Id.* at p. 4. The office action further stated that "[i]f the reply does not distinctly and specifically point out the supposed errors in the election of species requirement, the election shall be treated as an election without traverse." *Id.*

Following the September 29 restriction requirement, Eveleth could have prosecuted the '184 Patent so as to include the embodiment in Figures 1-6, but deliberately chose not to in favor of a different embodiment. On October 22, 2009, Eveleth responded to the restriction requirement by electing the embodiment in Figures 17-20. Ex. 4 (Response to Restriction Requirement) at p. 1. In his response, Eveleth stated that Claims 1, 2, 13-17, 20, 22, 24-29 and 31-33 encompass the embodiment in Figures 17-20 and asked that Claims 3-12, 18, 19, 23, 30 and 34-38 be withdrawn from consideration. *Id.* Eveleth did not elect the embodiment in Figures 1-6, nor did he specifically traverse the restriction requirement with respect to the embodiment in Figures 1-6 despite the opportunity to do so. *Id.* On June 23, 2010, Eveleth submitted a request for rejoinder of the embodiments in Figures 7-16, 21-25 and 31-35 and of Claims 3-12, 18, 19, 23, 30 and 34-38. Ex. 5 (Arguments and Remarks) at pp. 1-2. Eveleth did not request a rejoinder of the embodiments in Figures 1-6, 26-30 or 36. *Id.*

On August 4, 2010, the examiner issued a Notice of Allowance, which allowed Claims 1, 2, 13-17, 2-22, 24-29, and 33. Ex. 6 (Notice of Allowance and Fee(s) Due) at p. 5. Despite arguments to the contrary, the examiner did not withdraw the restriction requirement as to all previously restricted claims and figures. Instead, the examiner

withdrew the restriction requirement as to claims 3-11, 18, 19, 23, 31, 32, and 34-38—the claims for which Eveleth specifically requested rejoinder:

> **The restriction requirement is hereby withdrawn as to any claim that requires all of the limitations of an allowable claim.** Claims 3-11, 18, 19, 23, 31, 32, 34-38, directed to a different species are no longer withdrawn from consideration because the claim(s) requires all of the limitations of an allowable claim.

*Id.* (emphasis in the original).[4] Stated differently, the examiner withdrew the restriction requirement for Claims 3-11, 18, 19, 23, 31, 32, and 34-38 because those claims were dependent upon (and therefore included the limitations of) the allowed Claims 1, 2, 13-17, 2-22, 24-29, and 33.[5] This withdrawal resulted in the allowance of application Claims 1-11, 13-29, and 31-38, all of which were directed to a four-legged stool. Because the embodiments in Figures 7-16, 21-25 and 31-35 are directed to the four-legged stool disclosed in the allowed claims and are thus within the scope of the allowed claims, those embodiments were implicitly rejoined.

The embodiments in Figures 1-6, 26-30 and 36, on the other hand, were not rejoined for two reasons. First, the embodiments in those Figures are not directed to the four-legged stool disclosed in the allowed claims. For example, as Eveleth's counsel acknowledged at the *Markman* hearing, the embodiment in Figures 1-6 are

---

[4] Although Eveleth requested rejoinder of claims 12 and 30, those claims were not rejoined in the Notice of Allowance because those claims had been cancelled. *See* Ex. 5 at p. 1 ("Claims 12 and 30 have been cancelled."). Moreover, as a result of the cancellation of Claims 12 and 30, Claims 13-29 and 31-38 of the application were renumbered to correspond to Claims 12-28 and 29-36 of the '184 Patent, respectively.

[5] The examiner's withdrawal of the restriction requirement was consistent with Section 821.04(a) of the Manual of Patent Examining Procedure ("MPEP"), which provides that a claim subject to a restriction requirement is eligible for rejoinder only if the claim "depend[s] from or otherwise require[s] all of the limitations of an allowable claim" and that, upon proper rejoinder, "[t]he requirement for restriction . . . must be withdrawn." *See* Ex. 7 (MPEP) at § 821.04(a). The MPEP is a manual published by the USPTO that describes the laws and regulations that must be followed in the examination of a United States patent application. The MPEP is available at http://www.uspto.gov/web/offices/pac/mpep/index.htm.

12

directed to a three-legged stool. The embodiments in Figures 1-6, 26-30 and 26 thus fell outside the scope of the allowed claims and could not have been rejoined by virtue of the allowed claims. Second, rejoinder of the embodiments in Figures 1-6, 26-30 and 36 was not before the examiner because Eveleth did not request it. Section 818.03 of the MPEP provides that a restriction requirement will be considered upon request and may be withdrawn only where the patentee requests withdrawal and gives reasons why the withdrawal is appropriate (*see* Ex. 7 at § 818.03), as Eveleth did with respect to Claims 3-11, 18, 19, 23, 31, 32, and 34-38 and the embodiments in Figures 7-16, 21-25 and 31-35. *See* Ex. 5 at pp. 1-2.

Eveleth did not request withdrawal of the restriction requirement with respect to the embodiment in Figures 1-6. Accordingly, the examiner's withdrawal of the restriction requirement did not extend to the embodiment in Figures 1-6. The '184 Patent as issued therefore excludes the embodiment in Figures 1-6. Under the doctrine of prosecution disclaimer, the Counter Defendants are precluded from relying on the embodiment in Figures 1-6 and the references to that embodiment in the specification of the '184 Patent to construe "step." *See Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985) ("[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance."). Indeed, as the Federal Circuit has explained:

> The doctrine of prosecution disclaimer [precludes] . . . patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution. As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic

13

evidence and protects the public's reliance on definitive statements made during prosecution.

*SanDisk Corp. v. Memorex Prod., Inc.*, 415 F.3d 1278, 1286-87 (Fed. Cir. 2005) (internal citations and quotations omitted).

### E. The Counter Defendants' Proposed Construction of "Step" is Not Supported by the Doctrine of Claim Differentiation.

The Counter Defendants' reliance on the doctrine of claim differentiation is misplaced.

The doctrine of claim differentiation addresses the situation in which "an interpretation of one claim renders another claim superfluous, where an otherwise broad claim is interpreted narrowly such that it is coextensive with a narrower claim appearing in the patent." *Solomon v. Kimberly-Clark Corp.*, No. 97-1571, 1998 WL 279346, * 3 (Fed. Cir. May 26, 1998). The doctrine of claim differentiation is not applicable to Claim 12 and Claim 16 because those claims are different in scope regardless of how "step" is defined. Claim 12 generally provides the location and orientation of a "step" feature by reciting a "step or shelf [that] is located at an intermediate elevation along a front surface of [the] first non-folding support member." *See* '184 Patent at Column 23 lines 24-26. Claim 16, on the other hand, provides for the specific structure of the "step" feature by reciting a "step or shelf [that] is forwardly off-set relative to a front surface of [the] first non-folding support member." *See id.* at Column 24 lines 4-5. Claim 12 is, therefore, broader in scope than Claim 16 and covers not only the stool embodied in Claim 16, but also a stool that, for example, has an inward or backward facing "step or shelf" or a stool that has "a step or shelf [that] is at least two times greater than a

14

distance from the front surface of [the] first non-folding support member . . . to a back edge," as recited in Claim 19. See id. at Column 24 lines 16-19.

In any event, "the presumption created by the doctrine of claim differentiation is not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history" of the '184 Patent. See Regents of the Univ. of Cal. V. Dakoctomation Cal., Inc., 517 F.3d 1364, 1375 (Fed. Cir. 2008) (internal quotations omitted). During prosecution of the '184 Patent, Eveleth admitted that Claims 1, 12, 23, and 32 of the '184 Patent are directed to the embodiments in Figures 7-16, 21-25, and 31-35. See Ex. 5 at p. 2 ("Claims 1, 13, 24 and 33 also read on non-elected Figs. 7-16, 21-25 and 31-35).[6] By Eveleth's own admission, Claim 12 is directed to the embodiment in Figure 7 and not the embodiment in Figure 6. Accordingly, the "step" feature in Claim 12 must be defined as the "step" shown in Figure 7 (reference 260) and not as the "step" shown in Figure 6 (reference 102).

### III. CONCLUSION

For the foregoing reasons, Kikkerland respectfully requests that the Court construe the term "step" in the '184 Patent as "a rest for the foot in climbing, as in a stair or the rung of a ladder."

---

[6] As explained in footnote 4, Claims 1, 13, 24 and 33 of the '184 Patent application correspond to Claims 1, 12, 23 and 32 of the '184 Patent.

15

Dated this 30th day of March, 2012.

                                          Respectfully submitted,

                                          HUSCH BLACKWELL LLP

                                        */s/ Sudee Mirsafian Wright*
                                        Glenn H. Lenzen
                                        David S. Steefel
                                        Sudee Mirsafian Wright
                                        1700 Lincoln Street, Suite 4700
                                        Denver, Colorado 80203
                                        T: (303)749-7200
                                        F: (303) 749-7272
                                        Glenn.Lenzen@HuschBlackwell.com
                                        David.Steefel@HuschBlackwell.com
                                        Sudee.Wright@HuschBlackwell.com
                                        **Attorneys for Counter Claimant**
                                        **Kikkerland Design, Inc.**

CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

D. Sean Velarde
Trevor A. Crow
BURNS, FIGA & WILL, P.C.
6400 S. Fiddlers Green Circle, Suite 1000
Greenwood Village, CO 80111
T: (303) 796-2626
F: (303)796-2777
svelarde@bfw-law.com
tcrow@bfw-law.com
**Attorneys for Counter Defendant B&R Plastics, Inc.**

Stephen J. Wesolick
WESOLICK KONENKAMP & ROUNDS, LLP
201 Main Street, Suite 204/ PO Box 169
Rapid City, SD  57709
T: (605) 593-4551
F: (866) 556-2229
sjwesolick@gmail.com

Todd P. Blakely
Joseph E. Kovarik
Ian R. Walsworth
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, Colorado 80202-5141
T: (303) 863-9700
F: (303) 863-0223
tblakely@sheridanross.com
jkovarik@sheridanross.com
iwalsworth@sheridanross.com
**Attorneys for Counter Defendants Bradley Eveleth, Reed Henschel, Foldz, LLC, and Tower Stools LLC**

/s/ Linda Chandler