IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 08-cv-02646-RBJ-MEH

KIKKERLAND DESIGN, INC., a New York domestic business corporation,

    Counter Claimant,

v.

B & R PLASTICS, INC., a Colorado corporation,

    Counter Defendant/Cross Claimant,

v.

REED HENSCHEL, an individual,
BRADLEY EVELETH, an individual,
FOLDZ LLC, a South Dakota limited liability company, and
TOWER STOOLS, LLC, a South Dakota limited liability company,

    Counter Defendants/Cross Claimants.

## ORDER – CLAIM CONSTRUCTION

The case is before the Court on disputes concerning the meaning of three terms in a utility patent. The Court heard argument on March 8, 2012, and briefing was completed on March 30, 2012. The Court apologizes for its delay in issuing this order.

**Case History**

This case involves a number of disputes arising from several utility and design patents concerning foldable stools. B&R Plastics begin the case on December 5, 2008, complaining that Kikkerland Design, Inc. was selling knock-offs of stools patented by inventors Reed E. Henschel and Bradley R. Eveleth and licensed to B&R (U.S. Patents No. D460,566S,"the '566 Patent", and No. D566,856S, "the '856 Patent")

[docket #1]. Kikkerland answered and counterclaimed, seeking declarations of invalidity and non-infringement of the two design patents [#36].

On November 4, 2009 B&R filed an amended complaint joining 13 corporations that operate stores such as Bed, Bath & Beyond where the alleged knock-offs were being sold [#82]. On December 9, 2009 Kikkerland filed an unopposed motion to stay the case pending resolution of similar claims filed by B&R in litigation pending before the United States International Trade Commission [#111]. That was followed by a stipulated motion to close this case administratively pending the outcome of the ITC matter [#121], which was granted on January 7, 2010 [#127]. The case was formally reopened pursuant to Judge Blackburn's order of March 22, 2011 [#161]. Meanwhile, B&R had moved to dismiss its claims [#129]. The Court dismissed those claims with prejudice [#161]. Kikkerland had moved to amend its counterclaims and join additional counterclaim defendants [#133], which the Court also granted [#161]. The Court did not address and apparently reserved a possible award of costs to Kikkerland.

That order placed Kikkerland in the effective position of plaintiff. The defendants (on the counterclaim) now were B&R, Mr. Henschel, Mr. Eveleth, and two South Dakota limited liability companies associated with those gentlemen: Foldz LLC and Tower Stools, LLC [#134]. In addition to three claims seeking declarations of non-infringement, invalidity and unenforceability of the '566 patent, Kikkerland's amended counterclaims included claims asserting sham litigation, attempted monopoly, false marketing, unfair competition (two counts), false advertising, civil conspiracy, and fraud. Kikkerland seeks equitable and monetary relief. The gist of these claims was that the counter-defendants knew that the '566 Patent was invalid or otherwise unenforceable when the complaint and amended complaint were filed; that the claims against Kikkerland were vexatious; and that relevant information had been withheld from the Patent Office and the ITC.

On April 26, 2011 B&R answered Kikkerland's counterclaims and asserted 11 cross-claims for indemnification and damages against Mr. Henschel, Mr. Eveleth, Tower Stools and Foldz [177]. The gist

of the cross-claims is that Mssrs. Henschel and Foldz had misrepresented the validity of the '566 and '856 Patents when they licensed those patents to B&R. The cross claims were based upon theories of breach of contract, unjust enrichment, promissory estoppel, civil conspiracy, fraud, negligent misrepresentation, and indemnification.

On June 6, 2011 Mr. Eveleth and his LLC, Foldz, answered Kikkerland's amended counterclaims and asserted counterclaims against Kikkerland [#203]. This pleading introduced another patent to this litigation, namely U.S. Patent No. 7,905,184 B2 ("the '184 Patent"), a utility patent issued on March 15, 2011 to Mr. Eveleth. The counterclaim seeks equitable and monetary relief against Kikkerland for alleged infringement of the '566 Patent , the '184 Patent and certain trademark and trade dress rights.

On June 20, 2011 Mr. Eveleth and Foldz answered B&R's cross-claims and counterclaimed against B&R seeking royalties under two license agreements and asserting infringement by B&R of the '856 Patent, the '184 Patent, and yet another patent, U.S. Patent No. D448,091 ("the '091 Patent") as well as violation of the Lanham Act, unfair competition, fraud, unjust enrichment, and conversion [#208]. On the same day Mr. Henschel and Tower Stool filed their answer to B&R's cross-claims and counterclaimed against B&R for breach of their licensing agreement [#209]. They also answered Kikkerland's counterclaim and counterclaimed against Kikkerland for infringement of the '566 Patent, trade dress infringement and unfair competition [#210]. Kikkerland's responses [##213, 217], though replete with affirmative defenses (not uncommon in this case), thankfully added no additional counterclaims or cross claims .

Kikkerland next filed Second Amended Counterclaims against B&R, Mr. Henschel, Mr. Eveleth, Foldz and Tower Stools [#221]. This pleading asserts 11 counterclaims, essentially mimicking its earlier pleading [#134]. This was followed by a new round of answers, counterclaims, etc. [##223-229, 238, 240-243]. At this point my good fortune was to have the case reassigned to me [#244]. On October 13, 2011 the parties submitted a joint status report that made a valiant effort to understand and summarize the claims and defenses that had emerged by that point [#251]. The parties noted that the case was scheduled for a 12-day jury trial to begin on June 18, 2012. The trial date has subsequently been moved to October

19, 2012. The Court can only wonder at the ability of the parties and the Court to present all these claims to an unsuspecting group of seven individuals with the hope that all would be understood and sorted out. My own effort to diagram the fray resulted in a set of arrows and lines that Rube Goldberg himself could envy.

Kikkerland later moved to amend its claims and defenses somewhat [#260], which was granted [#277]. Kikkerland also moved to bifurcate issues of entitlement to attorney's fees from the issue of the amount of attorney's fees [#261], which also was granted [#278] (who could deny anything that would simplify this case?). Then, counterclaim defendants Henschel, Eveleth, Foldz and Tower Stools stipulated to the dismissal of claims that Kikkerland infringed the '566 patent, and Kikkerland stipulated to the dismissal of its non-infringement claims against them [##279, 280].

On January 31, 2012 counsel appeared for a scheduling conference. The parties debated the need for a "Markman Hearing" concerning certain terms in the '184 Patent. The Court set a Markman Hearing for March 8, 2012 [#281], which brings me to the issues now pending. Hopefully, resolution of these claims construction issues will be a step towards further simplification or even ultimate resolution of the disputes in this case.

**Facts Pertinent to the Claims Construction Issue**

Claims construction issues pending before the Court arise from the '184 patent, which is a utility patent issued to Mr. Eveleth on March 15, 2011 concerning a foldable stool or table. At issue are three terms found in Claims 1, 12 and/or 13 of the '184 patent: "**step**," "**edge**," and "**wherein said first lateral portion and second lateral portion include at least one projection associated with an upper edge**." The three claims with the disputed terms bolded are as follows:

Claim 1

A foldable stool, comprising:

a first upper portion have a first **edge** and a second **edge**

a second upper portion having a first **edge** and a second **edge**, wherein said first upper portion and said second upper portion are rotatably interconnected by a hinge;

4

a first non-folding support member having a top **edge**, a bottom **edge**, a left lateral **edge** and a right lateral **edge**, and wherein said top **edge** is interconnected by a hinge to said second **edge** of said first upper portion, said first non-folding support member formed of a hard plastic material and comprising at least a first **step**, wherein a side-to-side oriented centerline of said first **step** is eccentrically located relative to a front surface of said first non-folding support member, wherein a distance from a front **edge** of said first **step** to said front surface of said first non-folding support member at a top surface of said first **step** to said front surface of said first **step** is at least two times greater than a distance from the front surface of said first non-folding support member at the top surface of said first **step** to a back **edge** of said first **step**;

a second non-folding support member having a top **edge**, a bottom **edge**, a left lateral **edge** and a right lateral **edge**, and wherein said top **edge** is interconnected by a hinge to said second **edge** of said second upper portion, said second non-folding support member formed of the hard plastic material;

a first lateral portion comprising a first folding support member hingedly interconnected to a second folding support member, said first lateral portion having a left lateral **edge** and a right lateral **edge**, said left lateral **edge** hingedly interconnected to said right lateral **edge** of said first non-folding support member and said right lateral **edge** hingedly interconnected to said left lateral **edge** of said second non-folding support member;

a second lateral portion comprising a third folding support member hingedly interconnected to a fourth folding support member, said second lateral portion having a left lateral **edge** and a right lateral **edge**, said left lateral **edge** hingedly interconnected to said right lateral **edge** of said second non-folding support member and said right lateral **edge** hingedly interconnected to said left lateral **edge** of said first non-folding support member; and

**wherein said first lateral portion and second lateral portion include at least one projection associated with an upper edge** thereof for operable engagement within a corresponding receptacle located in a bottom surface of at least one of said first upper portion and second upper portion, and wherein said stool is collapsible from a first position of use to a second position of storage where the first non-folding support member and the second non-folding support member are positioned adjacent to each other.

### Claim 12

A foldable device for placement on a substantially horizontal underlying surface, the foldable device comprising:

an upper member providing a substantially horizontal surface when the foldable device is in a use position on the underlying surface, the upper member including a first upper portion hingedly interconnected to a second upper portion, said first upper portion having an outer **edge** and said second upper portion having an outer **edge**;

a first non-folding support member having an upper **edge** hingedly interconnected to said outer **edge** of said first upper portion, said first non-folding support member

comprising at least one **step** or shelf, wherein said **step** or shelf is located at an intermediate elevation along a front surface of said first non-folding support member;

a second non-folding support member having an upper **edge** hingedly interconnected to said outer **edge** of said second upper portion; and

a first folding support member having lateral **edges** that are hingedly interconnected to lateral edges of said first non-folding support member and said second non-folding support member;

a second folding support member having lateral **edges** that are hingedly interconnected to lateral **edges** of said first non-folding support member and said second non-folding support member; and

wherein said device is collapsible from said position of use where the first and second non-folding support members are positioned apart to a storage position of storage where the first non-folding support member and the second non-folding support member and the second non-folding support member are positioned adjacent to each other.

### Claim 13

The foldable device as claimed in claim 12, wherein said first folding support member and said second folding support member comprise first and second lateral portions, wherein:

said first lateral portion of said first folding support member is hingedly interconnected to said right lateral **edge** of said first non-folding support member;

said first lateral portion of said second folding support member is hingedly interconnected to said right lateral **edge** of said second non-folding support member;

said second later al portion of said first folding support member is hingedly interconnected to said left lateral **edge** of said second non-folding support member, and

said second lateral portion of said second folding support member is hingedly interconnected to said left lateral **edge** of said first non-folding support member.

**Conclusions**

Claim construction is a matter of law for the Court. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 384-91 (1996). The objective is to give disputed terms in a patent claim the meaning that a person of ordinary skill in the relevant art would have given them at the time of the invention unless the patent applicant has clearly and unambiguously defined the terms

differently.  *See, e.g., Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.,* 493 F.3d 1358, 1361 (Fed. Cir. 2007).

The Court principally considers "intrinsic evidence," i.e., the words of the claim itself in the context of the entire patent including as relevant the specification and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-17 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1170 (2006).  The specification is "the single best guide to the meaning of a disputed term." *Vitrionics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996).  The court may not, however, read limitations from the specification, particularly the disclosed embodiments, into the claim. *Phillips,* 415 F. 3d at 1323-24.  "Extrinsic evidence" such as dictionaries, treatises and, in some cases, expert testimony can also be considered, although such evidence generally should be given less weight than intrinsic evidence.  *Phillips,* 415 F.3d at 1317-19.

<u>The term "step"</u>

The parties set forth proposed definitions in a Joint Claim Construction Statement [#283]. The inventors propose the definition "a rest for the foot, including a horizontal lower edge of an aperture of varying width and depth."  B&R initially proposed "a rest for the foot including a lower edge of an aperture."  During oral argument, however, B&R's counsel adopted the inventor's proposed definition.  Kikkerland proposes "a rest for the foot in climbing, as in a stair or the rung of a ladder."

Kikkerland's proposed definition, a dictionary definition, is consistent with a lay interpretation of this common term.  The questions presented here, however, are whether the inventors as lexicographers have assigned a special meaning to the term, and if not, (2)her in the context of the entire patent and its history any of the three proposed definitions provide the meaning of the term as it would be understood by a person of ordinary skill in the art.

7

The inventors point to the abstract which states that the embodiments "may comprise one or more intermediately located steps or shelves." There is language in the "Summary of the Invention" section of the specification that '[i]t is yet a further aspect of the present invention to provide a foldable stool that has at least one step positioned between a ground surface and upper platform. In one embodiment, the stool has a semi-circular aperture in at least one leg that thereby forms a step." Col. 2 at lines 33-37. The one embodiment is depicted in Figures 1-6. In Figure 6, the horizontal lower portion of the aperture (#94) bordered by the edges of the aperture (#98) within the first support member (#18) is labeled as a "step" (#102). In column 9 the inventors state that what they call "the horizontal lower edge **98** to the aperture **94** may be used to provide a step for the user." *Id.* at lines 45-48.

However, that begs the question whether a "step" is a "rest for the foot" to be used for ascending or descending, or simply a "rest for the foot." During oral argument counsel for the inventors suggested that a person could sit on the stool and rest his or her feet on the "step" created by the horizontal lower edge of the aperture in the non-folding support membrane, e.g., what is marked as #102 on Figure 6. It is, I assume, possible to rest one's feet on that "step" if the stool is tall enough or the user short enough. However, the inventors pointed to nothing in the patent, nor could I find anything, that suggests that this was ever an intended or expected use of this "step." Indeed, "[t]he purpose of the aperture **94** is to reduce the weight of the stool." Col. 9 at lines 36-37.

I note that the inventors have not pressed this argument in their post-hearing brief, although B&R's post-hearing brief [#288] does so. *Id.* at 17. I am not persuaded. Rather, the patent taken as a whole indicates that a "step" was envisioned to be a rest for the foot to be used for climbing, i.e., for ascending and descending. The three-word phrase "step or shelf" is used

twice in claim 12. This phrase or variations of it ("steps or shelves," "shelf or step," "shelves or steps" are found at col. 2 at lines 41, 43, 55 and 56; and col. 3 at lines 25, 29, 33 and 34; and in the Abstract. The invention provides a method of using a "step stool" for "stepping up" and "stepping down." Col. 4 at lines 39-55. The Specification states, albeit by way of example and not limitation, that a step with a depth between about 1 to 8 inches but preferably 3 to 6 inches may be used and more preferably about 4 inches is contemplated. Col. 12 at lines 17-23. It is hard to envision a one-inch step that would be safe for climbing, but a step between one and eight includes with a preference in the three to six inch range suggests that something on which to stand was intended. The Court may not, and does not, read these limitations from the preferred embodiments into the claim. These are simply examples reflecting the implied intent that a "step" is intended to be used for ascending or descending.

The inventors suggest that the lower horizontal "edge" of the aperture depicted in Figure 6 could be used for climbing. They point out that the stool can be constructed of durable material that is not likely to wear out or break. Col. 10 at lines 60-66. The instability of the stool if used in that manner is a matter of extrinsic evidence which, though perhaps a matter of common sense, has not been fully developed and need not be resolved at the claim construction stage. Nor is the Court required to address and resolve at this stage the dispute between the parties concerning whether Figure 6 and the three-legged stool it depicts are or are not a part of the patent as a matter of prosecution history.[1]

Rather, the Court finds and concludes that Kikkerland's proposed definition of the word "step" is reasonable. The inventors were entitled to give the term a special meaning that need

---

[1] Kikkerland presents a colorable argument based upon prosecution history embodied in documents with docket numbers 289-3, 289-4 and 289-5 that the three-legged stool depicted in Figure 6 is not part of the '184 patent. However, I note that Kikkerland cites Figure 6 and references 98 and 102 in the Joint Claim Construction Statement in support of its proposed definition of the term "edge."

not comport with the ordinary and customary meaning of the word. *Phillips,* 415 F.3d at 1316. However, this is not a situation where the inventors have set forth an explicit definition of a term. *Compare CIVIX-DDI, LLC v. Microsoft Corp.,* 84 F. Supp. 2d 1132, 1158 (D. Colo. 2000). "A patentee's lexicography must, of course, appear 'with reasonable clarity, deliberateness, and precision' before it can affect the claim." *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1249 (Fed. Cir. 1998)(quoting *In Re Paulsen,* 30 F.3d 1475, 1480 (Fed. Cir. 1994). Here, the inventors' proposed definition, "a rest for the foot, including a horizontal lower edge of an aperture of varying width and depth," does not provide a consistent definition that fits the term "step" throughout the contested claims and the patent as a whole. Rather, it appears to be a definition contrived to fit one embodiment.

The Court adopts for the meaning of the term "step" a slight variation of Kikkerland's proposed definition: "a rest for the foot in ascending or descending, as in a stair or the rung of a ladder."

The term "edge"

The inventors propose "a border where an object or area begins or ends." BNR did not take a position in the Joint Claim Construction Statement, but in its post-hearing brief [#288] it argues for "the narrow part adjacent to a border." *Id.* at 14. Kikkerland proposed "a line or line segment at which two plane surfaces meet" in the Joint Claim Construction Statement but confined its argument in its post-hearing brief [#289] to the term "step."

The two definitions proposed in the Joint Claim Construction Statement do not appear to be much different in substance. The parties cite some portions of the Specification in common, i.e., col. 9 at lines 36-40 and 45-51; Figures 1, 2, 6, 7, 10, and 12; and reference numbers 98, 268 and 272. The Court finds B&R's belated proposal in its post-hearing brief regarding the

meaning of the term "edge" based upon the doctrine of claim differentiation to be unpersuasive. The Court defines the term "edge" to mean "the line where an object or area begins or ends; border."

<u>The phrase "wherein said first lateral portion and second lateral portion include at least one projection associated with an upper edge"</u>

The inventors and Kikkerland take no position. B&R proposes "a first lateral portion and a second lateral portion each having a projection on their respective upper edges." Because there is no dispute, the Court adopts B&R's proposed definition.

DATED this 6th day of June, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge